IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL DAVID SEEDS,<br><br>*Defendant* | Case No. 1:26-CR-055<br><br>Hon. Leonie M. Brinkema<br><br>Sentencing: July 28, 2026 |

## <u>POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING</u>

August 25, 2023 began like every other for Witness-1.[1] A teacher at an international

school in Seoul, Korea, she powered through a full slate of parent-teacher conferences and

arrived home to the apartment she shared with her husband and two daughters. Steps inside the

door, Witness-1's teenage daughter sprinted toward her, sobbing desperately as she exclaimed,

"I did something bad." The disoriented mother then came to understand how that seemingly

routine day would reshape her family's future:



Under Seal_Attachment 2.

The days that followed unfolded the truth about how the defendant pursued a coercive

and sexually explicit relationship with Witness-1's daughter—

---

[1] The full name of Witness-1 is known to the parties and law enforcement, but her name is anonymized here to protect Minor Victim 1's identity and privacy.

█████████████████████████████████████

while he threatened to sell the sexually explicit images he coerced her into making weeks before.

The defendant now comes before the Court for sentencing after having pleaded guilty to one count of Coercion and Enticement of a Minor to Engage in Sexual Activity in violation of 18 U.S.C. § 2422(b). The applicable guidelines range has been correctly calculated in the Presentence Report ("PSR") as 210 to 262 months of imprisonment. Dkt. 41 at ¶ 111.

For the reasons below, the United States respectfully recommends the Court impose a sentence of 210 months in prison followed by twenty years of supervised release.

## BACKGROUND[2]

### I.   Factual Summary

*The Relationship*

The summer of 2023 was a lonely one for 14-year-old MV1. Her family relocated from Texas to South Korea for her mother's teaching assignment the year prior. MV1, quiet and shy, felt increasingly isolated and searched for connection wherever she could. Eventually, she found herself in online chatrooms, and there, she met the 25-year-old defendant she affectionately called, "Mikey."

Initially, MV1 told the defendant she was 19 years old. About a week into their chatting, she confessed she was 14 years old. The defendant thanked her for being honest and said it would be best "we just split." Hours later, he reinitiated contact. He then purchased and provided MV1 a new social media account so the conversation of her revealing her true age would be

---

[2] The following facts are derived from the Statement of Facts, Dkt. 35, the PSR, Dkt. 41, or discovery that has been previously provided to defense counsel.

erased. He named the account, "e_victim" and often referred to MV1 as "his little victim." He thereafter pursued a robust online relationship with a child eleven years younger than him.

In Mikey, MV1 found the attention she so craved. They would message for hours every day. They would video chat. They would accompany each other to online gatherings where the defendant showed her off to his friends. MV1 confided in him about her loneliness, social anxieties, and insecurities. MV1 fell in love with Mikey.

About five weeks into the relationship, the defendant twisted MV1's emotional devotion into sexual exploitation. On August 2, 2023, the defendant first asked MV1 to have "esex."[3] She replied, "I would do anything for you eventually I just need to be pushed because im a little pussy." He responded, "am I supposed to like erape you."

The next day, he intensified his pursuit in a mix of social media text messages and messaging while the two were live on video chat.

| Sender | Content (excerpts with extraneous sentences and memes removed) |
|---|---|
| SEEDS | u wanna know<br>what would secure u in my brain |
| MV1 | yas |
| SEEDS | i wanna see you<br>all of you<br><br>…<br>will you do that for me |
| MV1 | say the word and i will. go try and gget pictur |
| SEEDS | like im super<br>hyper sexual<br>but i don't act like that with just random girls<br>its just you<br>i have this need to watch you please yourself till it hurts<br>if u were still in the states id be inside u at this second<br><br>… |

_____

[3] "esex" is online slang for electronic sex or cybersex. It refers to two or more individuals engaging in sexual activities through a digital medium rather than in person.

| MV1 | we may need to ease into really..bad stuf. i am like. super insecure and i do not know what im doing so<br>it might be<br>tame at first<br>and<br>stuff<br>is that ok |
|---|---|
| SEEDS | whatever you feel comfy doing<br>its your trauma lol<br>i cum to the thought of you<br>pretty sure anything is gonna fly at this point<br>I wish you knew how sexy you were<br>all i think about when ur around<br>is just tracing your pretty pale skin<br>flipping you on your stomach<br>pulling off your panties with my teeth<br>eating you out<br>i dream of making your legs shake<br>sosososo bad<br>u make me fold<br>fuck u |
| MV1 | rah are those gooddddd orrr |
| SEEDS | yeees<br>show me ur butt |
| MV1 | hooray |
| SEEDS | show me<br>im so tired of asking<br>arch it<br>…<br>just set a timer on your camera goofball<br>get on your bed<br>and arch it<br>show me the whole thing<br>or do a video<br>you know how to arch |
| MV1 | if i get on my bed its gonna be real hard to explain if my parents see |
| SEEDS | tease me too<br>like pull them down a little<br>HOW DO U LOOK LIKE THAT AND NOT KNOW HOW TO BE SEXY<br>…<br>just pan the phone at your bed at some reasonable angle<br>preferrably above looking down<br>crawl on your bed like a little slut |

| | |
|---|---|
| | stretch your arms out in front of you<br>arch your lower half up<br>and reach back and kinda wiggle ur bottom as you pull your panties down<br>…<br>i wanna cum to you<br>as of rn im<br>basically stroking my shit looking at my cat<br>…<br>take all your clothes off<br>…<br>THATS THE WRONG ANGLE BRO |
| MV1 | I DONT KNOW WHAT IM DOING<br>… |
| SEEDS | can you recreate a video for me<br>if i send you<br>? |
| MV1 | ues<br>…<br>but still, ull get it later tonight<br>is that ok!! |
| SEEDS | NO<br>I WANNA JACK OFF<br>NOWWWWW<br>…<br>squeeze your tits together<br>like take your bra off<br>and just grab them and squeeze them<br>…<br>i wanna see you nude<br>i want<br>cummable<br>videos<br>…<br>i just wanna have esex<br>…<br>i was just asking for nudes cause u tell me you want to please me |
| SEEDS | show me ur butthole<br>…<br>so are we having esex<br>…<br>the things i want from you<br>its so rough<br>im so used<br>to girls<br>just getting naked and fucking themselves on cam with me |

| SEEDS | no |
|---|---|
| | u go on cam |
| | and show me ur pussy |

On August 8, 2023, he tried again. MV1 confessed her inexperience but deep desire to

please him.

| Sender | Content (excerpts with extraneous sentences and memes removed) |
|---|---|
| SEEDS | can i cum to you |
| MV1 | are u joking or not i cannot TELLLLL |
| SEEDS | i really want to see your body |
| MV1 | will u block me afterwards no meme |
| SEEDS | the power u hold over me |
| | also no |
| | I wouldnt |
| | I enjoy u |
| | I just want to see you |
| MV1 | I want 2 please u |
| | i want to watch you squirt so bad |
| | that's |
| | i want a video of you just |
| | like writhing, in a panic state |
| | im so evil |
| | like it sounds bad |
| MV1 | NO its fin |
| | ok so can i tell u something that might confuse u |
| SEEDS | sure |
| MV1 | ok so im not used to um! like touching myself ngl. like i dont do it much so idk what to do atp LMAO |
| MV1 | like |
| | if that freaks u out idk |
| | is that ok |
| | MIKEEEY UR SCARING ME |
| | we dont have to |
| | i |
| | just want you to |
| | prop your phone up |
| | and just like |
| | record yourself |
| | touching your pussy |
| | I want you to finger yourself |
| | play with it |
| | idk this sounds so fucking odd |

|  | how do u not know |
| --- | --- |
| MV1 | its not odd its basic ngl<br>I just don't omg |
| SEEDS | IT IS BRO |
| MV1 | lIke<br>BRO<br>im unexperienced thats all<br>idk what feels good like I am clueless<br>I am a bit goofy |
| SEEDS | I just want you to send me what u feel like is good<br>obviously im older like I know what I want |
| MV1 | yes so be specific<br>bro I like u I want to do what u like |

Thereafter, the defendant continued to exploit MV1, demanding "constant pussy pics" and "cum videos" and asking for "esex." Eventually, his proclamations turned gory. MV1 saved the following image from the defendant:



**Darth Kassadin**  Today at 10:39 AM
i wanna tear ur skin off
and wear ur face
like
10:39 AM  my own personal mask

On August 18, 2023, the defendant elaborated:

| Sender | Content |
| --- | --- |
| SEEDS | actually buy a rope<br>and then<br><br>…<br>tie urself up<br>so i can rape u<br>and then stab u<br>and bury ur worthless fucking corpse<br><br>…<br>and I wanna have esex<br><br>…<br>splish<br>splash<br><br>… |



|  | i wanna drink ur pussy juice<br>…<br>die retard |
| MV1 | WOW<br>ok |
| SEEDS | i wanna watch you ride<br>you have your freaky fucking edward pillow<br>get naked<br>and ride it<br>and cum on it |

Eventually, the relationship unraveled.

## II.    Procedural History

On December 10, 2025, the government filed a Criminal Complaint and supporting

Affidavit charging the defendant with Sexual Exploitation of a Child and Attempted Sexual

Exploitation of a Child in violation of 18 U.S.C. § 2251(a) and (e). Dkt. 1. Law enforcement arrested the defendant on December 11, 2025. The defendant appeared for an initial appearance on December 12, 2025 and was released on bond with pretrial supervision. On March 11, 2026, the defendant's bond was revoked, and he has remained in custody since then. Dkt No. 24, 28.

On March 24, 2026, the Government filed a one-count Criminal Information charging the defendant with Coercion and Enticement of a Minor to Engage in Sexual Activity, including 18 U.S.C. § 2251(a), all in violation of 18 U.S.C. § 2422(b). Dkt. 30. On March 31, 2026, the defendant waived indictment and entered a plea of guilty as to the Criminal Information. Dkt Nos. 32, 33.

## III.   Sentencing Analysis

### A.  Statutory Penalties and Guidelines Calculations

#### 1.  Statutory Penalties

Count One, Coercion and Enticement of a Minor to Engage in Illegal Sexual Activity, in violation of Title 18 U.S.C. § 2422(b), carries a mandatory minimum term of imprisonment of 10 years and a maximum term of life in prison.

#### 2.  Guidelines Calculations

The PSR correctly calculates the defendant's combined adjusted offense level and the acceptance of responsibility credits resulting in an offense level of 35. Dkt. 41 at ¶¶ 64–75. The defendant's Criminal History Category is correctly calculated as a III. *Id.* at ¶¶ 81–82. Therefore, the defendant's Guidelines range is 210 to 262 months of imprisonment. *Id.* at ¶ 11

### B.  Section 3553(a) Factors

A sentence of 210 months of imprisonment is sufficient but not greater than necessary to reflect the totality of the defendant's conduct and comport with the purposes of sentencing set forth in 18 U.S.C. § 3553.

### 1.  The Nature, Circumstances, and Seriousness of the Defendant's Offense

Over the course of several months and thousands of messages, the defendant pursued a sexually explicit relationship with a child eleven years younger than him. In the face of her innocence and inexperience, he pressured her into progressively sexualized conversations and acts—including producing child pornography of herself —all by exploiting her desire for his approval. His ongoing proclamations of care and dedication drew her further into a tumultuous relationship. The turmoil he cultivated in MV1's life eroded her well-being, and at her breaking point, he had a choice. He could have nurtured her. He could have calmly walked away. He could have called for help. He chose deadly cruelty:



Under Seal Attachment 1.

MV1's survival that day and since is not the defendant's mitigation; it is the strength and power of her and her family's love. For that, the defendant gets no credit.

Studies and case law both speak to the fears of how MV1 will heal. "Long-term studies show that sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways in which no just or humane society

can tolerate." *United States v. Irey*, 612 F.3d 1160, 1207 (11th Cir. 2010) (en banc) (collecting authority). "When child pornography is produced in conjunction with the sexual abuse of children . . . the harm to the child victims is magnified and perpetuated." *Id.* at 1208. The Fourth Circuit has long held that "child pornography crimes are grave offenses warranting significant sentences." *United States v. Johnson*, 242 F. App'x 7, 11 (4th Cir. 2007). The coercion to produce child pornography of a vulnerable, inexperienced girl who repeatedly professed her discomfort, warrants that and much more. The nature of the defendant's crime warrants a sentence within the Guidelines that are structured to account for the seriousness of this offense.

### 2. The Defendant's History and Characteristics

The defendant's characteristics are an amalgamation of mitigation and aggravation. Simply stated, Mr. Seeds is not well. His chats with MV1 illuminate his instability from moment to moment. His behavior both on bond and in jail demonstrate a concerning deterioration. For his troubled home life and his mental health struggles, he deserves compassion. He needs help. And the government supports whatever intersection of the legal system and mental health treatment that can be extended to him.

At the same time, the defendant has yet to demonstrate accountability and personal agency in seeking help. His father is retired from the military. That service afforded the defendant quality health care, including mental health care, until he was 23 or 26, depending on the insurance plan. In spite of this, he was largely untreated despite full awareness of his mental health issues when he committed this crime at age 25. He has refused throughout his life to take medication. When professionals have recommended medication and mental health counseling, he has declined to comply. More recently, pretrial services offered him weekly counseling. Until his behavior stripped him of privileges, Alexandria Detention Center offered some semblance of

weekly counseling. The Internet, which the defendant spent the vast majority of his days and nights, on offers limitless resources of articles, videos, and books to further behavioral health treatment. He has failed to avail himself of these resources.

In sum, Mr. Seeds' history and characteristics merit a measure of compassion. But without treatment, those same features left untreated are dangerous.

### 3.  Promote Respect for the Law and Provide Just Punishment

Congress enacted federal criminal laws targeting child exploitation to address ongoing sexual abuse and victimization of children. S. Rep. 95-438, 5, 1978 U.S.C.C.A.N. 40, 42-43, 56. But this legislation and its later amendments are more than prophylactic measures. They reflect value judgments and the accepted moral norms of our society. As one Senate Judiciary Committee report concluded: "the use of children . . . as the subjects of pornographic materials is very harmful to both the children and the society as a whole," describing the conduct as "outrageous." S. Rep. 95-438, 5, 1978 U.S.C.C.A.N. at 43. Put differently, the defendant did not just violate federal law, he also transgressed universally recognized moral principles—the need to protect and nurture children and not to be titillated by depictions of their sexual abuse.

The defendant knew he should not be pursuing an online relationship with MV1; he did it anyway. He knew he should not be grooming her to engage in progressively sexualized chats; he did it anyway. And he knew he should not be coercing her to create child pornography; he did it anyway. He knew what he was doing was both harmful and illegal, and yet he persisted over a sustained time period. This Court should craft a sentence that appropriately expresses social condemnation of the defendant's crime, captures the harm he has caused, and promotes respect for the rule of law. The government's recommended sentence does all three.

**4. The Need for the Sentence Imposed to Afford Adequate Deterrence and Protect the Public**

Both specific and general deterrence call for a significant sentence in this case. With respect to specific deterrence, the defendant repeatedly called to attention the wrongfulness of his exploitation of MV1. In one chat, he proclaimed, "im older. According to the rules of life that somehow exist I am not allowed to love you or ask the tings I want from you. But I want to. I still want u. I want u so much. And its so werd that I'm not allowed to. I hate that." Later this same day, he instructed MV1 how to make him sexually explicit videos. Several days later, he said, "what am I doing. Holy shit. I DONT LIKE KIDS . . . BUT THEN U COME ALONG AND LIKE FUCK MY WHOLE LIFE UP. FUCK. Im unironically so in love with you. How. How how how how how . . . you do not look 14 you do not act 14 you are so sexy to me." He purposefully opted to contravene both legal and moral norms. The defendant further showed no remorse or concern when interviewed—claiming at first he did not know anyone with MV1's name, and though he eventually admitted he did, he purported to not know her age. At no point did he ask about her well-being. His behavior was deliberate and dangerous to society.

As the Supreme Court has noted, there are "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class." *Smith v. Doe*, 538 U.S. 84, 103 (2003). In fact, "[s]tudies and reports in this field are consistent with what judicial decisions show: pedophiles who have sexually abused children are a threat to continue doing so, and age does not remove the threat." *Irey*, 612 F.3d at 1214 (citing various studies and reports); *see also United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders."). The sentence imposed must therefore protect the public as long as possible and account for the specific danger he poses to minors.

General deterrence is especially important in cases like this one. Countless offenders like him engage in similar conduct because they know it is difficult to detect and the victims are unlikely to report their crimes. He and those who think like him need to understand that they risk lengthy prison sentences for this conduct and, perhaps, will decide the risk is too much. The sentence in this case must constitute a loud and clear warning to all, and particularly to the world engaging in online relationships, that severe consequences will result from disregarding a child's age and innocence.

### C. Supervised Release

Twenty years of supervised release is warranted. "Supervised release . . . is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). Instead, it "fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Under 18 U.S.C. § 3583(k), the authorized term of supervised release for the defendant's offense is at least five years and up to life. This five-year mandatory minimum term reflects a heightened concern for recidivism among sex offenders and the need for supervision over time. *See* H.R. Rep. No. 107–527 at 2 (2002) (explaining that "studies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes" and that "the recidivism rates do not appreciably decline as offenders age"); H.R. Conf. Rep. No. 108-66, at 49–50 (2003) (discussing how amendment to 18 U.S.C. § 3583(k) "responds to the long-standing concerns of Federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders . . . whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison"). Notably, the Guidelines recommend a lifetime term of supervised release for sex offenders, U.S.S.G. § 5D1.2(b) (Policy Statement), which courts have observed "reflects

the judgment of Congress and the Sentencing Commission that a lifetime term of supervised release is appropriate for sex offenders in order to protect the public." *United States v. Morace*, 594 F.3d 340, 351 (4th Cir. 2010) (quotation marks and citation omitted).

Based on an assessment of these factors, the United States recommends that the Court impose twenty years of supervised release with the conditions of supervision described in 18 U.S.C. § 3583(d) for felons required to register under the Sex Offender Registration and Notification Act and those described in U.S.S.G. § 5D1.3(d)(7) for sex offenders. Given the defendant's age, seriousness of his conduct in this case, and continued pattern of concerning behavior even after arrest, twenty years of supervision is appropriate to limit his capacity to reoffend and provide him with steady access to the treatment and monitoring he clearly requires.

### D.  Special Assessments

The defendant must pay a mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013(a)(2)(A). The Justice for Victims of Trafficking Act (JVTA) imposes a mandatory assessment of $5,000 on any non-indigent defendant convicted of the offense to which the defendant is pleading guilty.[4] 18 U.S.C. § 3014. Though accounted for as a possibility in the plea agreement, the assessments under the Amy, Vicky, and Andy Child Pornography Victim Assistance Act, 18 U.S.C. §§ 2259A, are not applicable in this case.

---

[4] The money obtained from this assessment goes to the Domestic Trafficking Victims' Fund, which awards grants and enhances programming for victims of human trafficking and child pornography. The § 3014(a) assessment is payable after the defendant has satisfied all outstanding court-ordered fines, orders of restitution, and any other obligation related to victim compensation. *See* 18 U.S.C. § 3014(b) & (e).

### E. Restitution

Pursuant to 18 U.S.C. §§ 2429 and 3663, and the plea agreement, the defendant must pay the full amount of the victim's losses. The government has received a preliminary request for restitution from the family of MV1. If defense counsel is unable to reach an agreement on the this restitution request within 30 days of sentencing, the parties will request a separate hearing to determine the proper amount of restitution owed in this case.

### F. Forfeiture

The parties filed a consent order of forfeiture on March 31, 2026.

/

/

/

/

/

/

/

/

/

/

/

/

/

/

## CONCLUSION

The defendant's deliberate and deviant pursuit of MV1 and the harm he inflicted upon her warrants just punishment, and his characteristics and history, left untreated, demonstrate a continued risk of dangerous behavior from which society needs protection. The United States therefore requests that this Court sentence the defendant to 210 months of imprisonment and twenty years of supervised release.

Respectfully submitted,

Todd W. Blanche
Acting Attorney General

Date: July 21, 2026

Theophani K. Stamos
First Assistant United States Attorney

By:  _____/s/_____

Vanessa Strobbe
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3708
Fax: (703) 299-3980
Email: vanessa.strobbe@usdoj.gov